

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID MIRSKY, et al, )
)
   Plaintiffs )
) No. 06 C 4959
   v. )
) The Honorable William J. Hibbler
DANIEL BLUTHARDT, Directory of the )
Illinois Department of Financial and )
Professional Regulation, et al )
)
   Defendants. )

## MEMORANDUM OPINION AND ORDER

A group of optometrists challenge the constitutionality of the Illinois Optometric Practice Act of 1987. The Act bars optometrists from renewing their license to practice if they are not certified in the use of ocular pharmaceutical agents. The Plaintiffs argue that the requirement deprives them of a property interest without due process of law. The Illinois Department of Financial and Professional Regulation (the State) moves for summary judgment.

### I. Factual Background

The Plaintiffs, twelve Illinois residents, have practiced optometry in Illinois for between 30 and 58 years. (Def. 56.1(a)(3) St. ¶ 1). Their practice is governed by the Illinois Optometric Practice Act of 1987 (OPA). 225 ILCS 80/1. In 1984, the Illinois legislature amended the Act to allow optometrists who had received proper training to employ topical ocular pharmaceutical agents for both diagnostic and therapeutic purposes (DPAs & TPAs). (Def. St. ¶ 8; Public Act 83-1419, § 1). Fifteen years later, the Act was amended to require training in TPAs. (Def. St. ¶ 9; Public Act 91-141, § 5). The Act required all applicants for license renewal after January 1, 2006, to "apply

1

for and maintain certification to use therapeutic ocular pharmaceutical agents" (Def. St. ¶ 9; Public Act 91-141, § 5 (amending 225 ILCS 80/15.1(b))). The Act was amended a second time to provide optometrists licensed prior to 1965 an additional year to complete the required training, extending their licenses (minus the authority to administer TPAs) until January 1, 2007. (Def. St. ¶ 10; Public Act 94-787, § 10 (amending 225 ILCS 80/15.2)).

Among other things, optometrists can use ocular pharmaceutical agents to dilate their patients' pupils. (Def. St. ¶ 37). Dilation allows the optometrist to make a three-dimensional analysis of the optic nerve head, which helps diagnose glaucoma and other posterior ocular diseases. (Def. St. ¶¶ 38-39). Dilation also helps optometrists diagnose macular degeneration, particularly in patients with small pupils. (Def. St. ¶¶ 40-42). The American Diabetes Association recommends a yearly dilated eye exam to monitor the health of a diabetic patient's eye. (Def. St. ¶¶ 45-46). Ocular pharmaceutical agents also allow optometrists to perform tests measuring intra-ocular pressure or to diagnose glaucoma. (Def. St. ¶¶ 47-50).

Dr. David Mirsky, one of the Plaintiffs, elected not to receive TPA training because he believed that the training lacked sufficient clinical exercise to prepare optometrists in the use of TPAs. (Def. St. ¶ 25). Instead, Dr. Mirsky spearheaded this suit. In 1985, Dr. Mirsky met informally with officers of the Illinois Optometric Association (IOA) during a statewide meeting. (Def. St. ¶ 14). At the meeting, Michael Horstman of the IOA told Dr. Mirsky that the law could not have been passed if a "grandfathering" provision had been included. (Def. St. ¶ 15). According to Dr. Mirsky, Horstman told him that third-party payers and insurance providers believed that no optometrists should be excluded from the new statutory requirements. (Def. St. ¶¶ 16, 20-22). Dr.

Mirsky's conversation with Horstman forms the entire basis of his belief that the law is not for the benefit of the health, safety and welfare of the citizens of Illinois. (Def. St. ¶ 23).[1]

The parties deposed Dr. Albert Bucar, a faculty member of the University of Missouri School of Optometry and a past president of the IOA and the American Optometric Association. (Def. St. ¶ 32). Dr. Bucar believed the legislature had enacted the training requirements in good faith, though did not agree with the policy behind the legislation. (Def. St. ¶ 35). In short, Dr. Bucar believed that the legislation "didn't reflect the feelings of the majority of optometrists in Illinois." (Def. St. ¶ 35). Dr. Bucar also believed the Plaintiffs to be qualified to practice optometry despite their decision not to pursue training. (Bucar Dep. at 34-45).

## II. Standard of Review

Summary judgment should be granted only if there is "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a material fact exists, a court construes all facts in favor of the non-moving party and draws all reasonable inferences in favor of that party. *Kelbanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008). Although it is not a court's role to weigh the evidence or resolve conflicts in resolving summary judgment motions, a non-moving party must show there is evidence upon which a reasonable trier of fact could find for it. *De La Rama v. Illinois Dept. Of Human Serv.*, 541 F.3d 681, 685 (7th Cir. 2008).

---

[1] Dr. Edward Labny, another of the Plaintiffs, recalls a similar conversation with Horstman. (Def. St. ¶¶ 26-29). Like Dr. Mirsky, Dr. Labny elected not to become TPA certified. (Def. St. ¶¶ 30-31).

III. Discussion

Although the Fifth and Fourteenth Amendments protect an individual's right to follow a chosen profession, *see Green v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed. 2d 1377 (1959), economic regulation must bear only a rational relation to a legitimate state purpose, unless the regulatory scheme impacts a fundamental right or makes a suspect classification, *City of New Orleans v. Dukes*, 427 U.S. 297, 393, 96 S.Ct 2513, 2516-17, 49 L.Ed.2d 511 (1976); *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 487-89, 75 S.Ct. 461, 464-65, 99 L.Ed. 563 (1955). Courts defer to legislative determinations regarding the desirability of such regulation even when the regulation may be "unwise, improvident, or out of harmony with a particular thought." *Lee Optical*, 348 U.S. at 488, 75 S.Ct. at 489. The court's role is not to sit as a superlegislature to judge the legislature's policy determination, but instead to guard against invidious discrimination or wholly arbitrary acts, which "cannot stand consistently with the Fourteenth Amendment." *Dukes*, 427 U.S. at 303-04, 96 S.Ct. at 2517.

The OPA does not create a suspect classification, nor does it implicate a fundamental right. *See Maguire v. Thompson*, 957 F. 2d 374, 376 (7th Cir. 1992) (collecting cases). Consequently, the court will evaluate whether the statute violates the due process or equal protection clause using the rational basis test. *Id.* Under the rational basis test, the court presumes the constitutionality of the statute and the plaintiff must prove that the facts on which the legislature may have relied in shaping the classification "could not reasonably be conceived to be true by the governmental decisionmaker." *Vance v. Bradley*, 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed. 2d 171 (1979); *Dukes*, 427 U.S. at 303, 96 S.Ct. at 2516.

The Plaintiffs urge the Court to find that the statute lacks a rational basis because, as applied to them, there can be no reason why they should not be licensed. The gist of the Plaintiffs' argument lies in their perceived distinction between what they term "traditional optometry," in which an optometrist's practice is focused primarily upon vision care and optometry in which an optometrist uses TPAs and DPAs to provide eye care (including, for example, the diagnosis of disease). *See* Bucar Dep. at 42-45. In support, Plaintiffs point to the testimony of Dr. Bucar who opined that the Plaintiffs were "outstanding practitioners" and that there was no rational basis behind eliminating the practice of traditional optometry. Plaintiffs also point to Dr. Mirsky's testimony that DPA and TPA training provided by the IOA is insufficient to prepare practicing optometrists in the use of those agents.

Plaintiffs' argument that the statute is unconstitutional as applied to them is miscast. At best, it amounts to a disagreement about the parameters of the practice of optometry. This is not a case in which the regulatory scheme or classification is vague or overbroad and somehow prohibits legal conduct. *See, e.g., Ovadal v. City of Madison, Wis.*, 416 F.3d 531, 535 (7th Cir. 2005) (rejecting challenge that disorderly conduct statute was unconstitutional as applied to protester). Nor is this a case in which the Plaintiffs can demonstrate that the state discriminatorily applies the regulatory scheme. *See, e.g., Anderson v. Milwaukee County*, 433 F.3d 975, 980 (7th Cir. 2006) (rejecting challenge where plaintiff alleged an 'unwritten scheme' in the enforcement of statute banning literature distribution on public transit vehicles).

Instead, the Plaintiffs challenge the wisdom of Illinois legislature's regulatory scheme. Plaintiffs suggest that it was not rational for the Illinois legislature to refuse to create a layered licensing scheme, where some optometrists are certified to use TPAs and DPAs in their practice and

5

others are not, thereby preserving practicing optometrists who chose not to receive additional training. Such an argument, however, makes little sense. Professional fields constantly progress and change, both as new technologies emerge and as the philosophy of the profession evolves. To hold that the legislature acted irrationally — in refusing either to exclude practicing professionals from new licensing requirements or in failing to create a licensing scheme in which changes in the profession are reflected by a cacophony of licenses, each with its own subset of requirements — would forever mandate that the State grandfather all previously licensed professionals or create ridiculously complex licensing schemes every time it amended the licensing requirements of a given professional field. Certainly, the Constitution does not require such an absurd result. Instead as noted earlier, it is not the province of this Court to evaluate the desirability of the regulatory scheme. *Lee Optical*, 348 U.S at 488, 75 S.Ct. at 489.

Although the Plaintiffs may disagree with the standards set forth by the legislature in shaping the practice of optometry, the Court must accept these standards unless the Plaintiffs demonstrate they bear no rational relationship to the health and public safety of Illinois citizens. This the Plaintiffs cannot do. Even accepting the Plaintiffs' argument that they have been safely practicing optometry for many years as true, they have put forward absolutely no evidence to suggest that legislature's decision to require optometrists to be certified in the use of TPAs and DPAs does not advance the health and safety of Illinois citizens.

The Plaintiffs point obliquely to an off-the-record conversation with a member of the IOA who noted that certain lobbying groups (mainly insurance carriers) opposed excluding any current practitioners from the new regulations. They suggest that excluding the Plaintiffs from practice reduces the competition for optometrists who remained licensed. This argument borders on fanciful.

Insurance carriers, and not other optometrists, pushed the decision to reject a grandfather clause. The Plaintiffs' argument also ignores the fact that Plaintiffs had the opportunity to receive certification in the use of TPAs and DPAs (and thus retain their licenses). It falls far short of demonstrating that the legislature could not have reasonably conceived as true the facts on which they relied in shaping the regulatory scheme.

The Illinois legislature has the prerogative to define the standards to practice certain professions. *See Maguire*, 957 F.2d at 377. The Court will not second guess that discretion and therefore GRANTS the State's Motion for Summary Judgment.

IT IS SO ORDERED.

11/25/08
Dated

Hon. William J. Hibbler
United States District Court